**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ANGEL MOLINA,** : | |
|     **Plaintiff,** : | |
| : | |
|     v. : | No. 2:25-cv-0077 |
| : | |
| **LIEUTENANT GORDON**, *et al.*, : | |
|     **Defendants.** : | |

<u>**MEMORANDUM**</u>

**Joseph F. Leeson, Jr.**                                                                           **February 18, 2025**
**United States District Judge**

       *Pro se* Plaintiff Angel Molina, a convicted inmate who was previously confined at SCI Phoenix, brings this civil rights action pursuant to 42 U.S.C. § 1983 against several individuals employed there.[1] Molina names as Defendants Lieutenant Gordon, Counselor Murphy, Nurse Does #1 through #5, Officer Jane Doe, and John Does #1 through #5. He asserts that prison officials failed to protect him from an inmate assault and did not adequately attend to his medical needs after the assault. For the following reasons, the claims for deliberate indifference to a medical need asserted against the Nurse Doe defendants, Officer Jane Doe, and the John Doe defendants as well as the failure to protect claim asserted against Counselor Murphy will be dismissed without prejudice for failure to state a claim under 28 U.S.C. § 1915A(b)(1). The deliberate indifference claim asserted against a Nurse Doe involving an allegedly dirty cup of water will be dismissed with prejudice. The claim against Lieutenant Gordon may proceed to

---

[1] Molina is presently incarcerated at SCI Camp Hill. He originally filed this action in the United States District Court for the Middle District of Pennsylvania, and that Court transferred it to this Court because the events alleged in the Complaint transpired at SCI Phoenix. (*See Molina v. Lieutenant Gordon, et al.*, Civ. A. No. 24-2149, ECF No. 6 (M.D. Pa. Jan. 7, 2025).)

service, but Molina will first be granted leave to file an amended complaint if he so chooses to attempt to cure the defects the Court identifies in the claims dismissed without prejudice.

I.      **FACTUAL ALLEGATIONS**[2]

Molina claims that he was removed from a day room at SCI Phoenix on July 9, 2024, and taken to Lieutenant Gordon's office after being strip-searched and body-scanned. Compl. at 7. Gordon allegedly questioned Molina about contraband entering the prison and offered to have fifteen (15) years removed from his sentence if he cooperated. *Id.* When Molina explained that he had no knowledge about the contraband, Gordon got angry. Gordon spoke with Counselor Murphy on the speaker phone, who advised him that the only housing available was a cell containing a DC-status (*i.e.*, disciplinary custody) inmate. *Id.* Gordon told Murphy that "he's a big fella, he can handle himself," apparently referring to Molina. *Id.* Molina asked if he was going to be housed with a person with mental health issues, and Gordon smiled and said, "you'll be fine." *Id.*

Molina was taken to the Restricted Housing Unit (RHU) and placed on administrative custody (AC) status pending an investigation. When Molina approached the cell in the RHU, the inmate whom Gordon and Murphy previously discussed yelled that he would not take a cellmate. *Id.* Molina contends that officers assured the inmate that they would move Molina after 24 to 48 hours. *Id.* That allegedly did not occur. In the days that followed, Molina continued to be housed with the DC-status cellmate, and Molina informed officers verbally and in writing that they should not be housed together. *Id.* On July 17, 2024, Molina's cellmate repeatedly

---

[2] The factual allegations set forth in this Memorandum are taken from the Complaint (ECF No. 1). The Court adopts the sequential pagination supplied by the CM/ECF docketing system.

assaulted him on the head, face, and shoulder using a sock filled with bars of soap. *Id.* at 8. Molina, bloodied, lay on the floor and lost consciousness at some point. *Id.* The cellmate shouted, "I told yall I didn't want a celly." *Id.* Officers convinced Molina's cellmate to be handcuffed, and they placed handcuffs on Molina as well. *Id.*

Molina was taken to the medical unit, where Nurse Doe Defendants cleaned and photographed the cut on his head. *Id.* Molina states that "nurses with attitude cleaned the gash on the right side of my head near my eye, gave me hair ladened dirty water and a Motrin and when I complained of the water being dirty she stated that I shouldn't be so ungrateful and refilled the cup." *Id.* Molina complained that his back, shoulder, and eye were in pain but, other than the Motrin, "nothing was done." *Id.* He submitted subsequent request slips and grievances concerning the events.[3]

Molina alleges that Gordon and Murphy knew that Molina's cellmate had assaulted other inmates and were aware of the dangers the DC-status inmate posed if housed with another inmate. *Id.* at 8-9. They also knew about an alleged prison policy that prohibits housing inmates on DC- and AC- status together. *Id.* at 9. Despite their knowledge, Molina claims they placed Molina in the cell with a DC-status inmate because Molina refused to cooperate or provide useful information regarding the entry of contraband into the prison. *Id.* The unknown nurses and corrections officers ("Doe" Defendants) refused to provide medical attention despite Molina's complaints of head trauma, and body/eye pains. *Id.* Molina alleges that the Defendants violated the Eighth and Fourteenth Amendments through their failures to protect him and to

---

[3] Molina asserts that he exhausted his claims in grievances #1099536 and #1099563.

3

attend to his medical needs, and he also alleges unspecified "state law claims." *Id.* at 5. As relief, he requests compensatory and punitive damages. *Id.*

## II. STANDARD OF REVIEW

Although Molina has paid the filing fee in full, the Court has the authority to screen his Complaint pursuant to 28 U.S.C. § 1915A. *See Shane v. Fauver*, 213 F.3d 113, 116 n.2 (3d Cir. 2000) (recognizing that the district courts have the authority to screen a prisoner complaint pursuant to § 1915A(b)(1) even if the prisoner is not proceeding *in forma pauperis*). Section 1915A requires that the Court "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In doing so, the Court must dismiss a complaint or any portion thereof that fails to state a claim upon which relief may be granted." *Id.* § 1915A(b)(1).

Whether a complaint fails to state a claim under § 1915A(b)(1) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Neal v. Pa. Bd. of Prob. & Parole*, No. 96-7923, 1997 WL 338838, at *1 (E.D. Pa. June 19, 1997); *see also Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Accordingly, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other*

4

*grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As plaintiff is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

In addition, a complaint may be dismissed for failing to comply with Federal Rule of Civil Procedure 8.  *Garrett v. Wexford Health*, 938 F.3d 69, 91 (3d Cir. 2019).  To conform to Rule 8, a pleading must contain a short and plain statement showing that the plaintiff is entitled to relief.  *See Travaline v. U.S. Supreme Court*, 424 F. App'x 78, 79 (3d Cir. 2011).  The United States Court of Appeals for the Third Circuit has explained that in determining whether a pleading meets Rule 8's "plain" statement requirement, this Court should "ask whether, liberally construed, a pleading 'identifies discrete defendants and the actions taken by these defendants' in regard to the plaintiff's claims."  *Garrett*, 938 F.3d at 93 (citation omitted).  A pleading may still satisfy the "plain" statement requirement "even if it is vague, repetitious, or contains extraneous information" and "even if it does not include every name, date, and location of the incidents at issue."  *Id.* at 93-94.  The important consideration for the Court is whether, "a pro se complaint's language . . . presents cognizable legal claims to which a defendant can respond on the merits."  *Id.* at 94.

### III. DISCUSSION

Molina asserts claims based on alleged violations of his constitutional rights.[4]  The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C.

---

[4] Molina cites to the Eighth and the Fourteenth Amendments as the basis of his claims alleging deliberate indifference.  Compl. at 5.  Because he was a convicted and sentenced state prisoner at the time of the alleged events, *see* Compl. at 2, the claims will be analyzed under the Eighth Amendment's prohibition on cruel and unusual punishment, and not the Fourteenth Amendment's Due Process Clause (which ordinarily applies to such claims made by pretrial

§ 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Groman v. Twp. of Manalapan*, 47 F .3d 628, 638 (3d Cir. 1995) ("The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law."). To establish individual liability in a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, meaning a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims brought against that defendant. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998). In other words, "'[e]ach Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.'" *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original).

Molina claims that the Defendants violated the Eighth Amendment's prohibition on cruel and unusual punishment. "To determine whether prison officials have violated the Eighth Amendment, we apply a two-prong test: (1) the deprivation must be 'objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities'; and (2) the prison official must have been 'deliberately indifferent to inmate health or safety.'" *Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (alterations omitted)). Such necessities include food, clothing, shelter, medical care, and reasonable safety. *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000). To violate the Eighth

---

detainees), *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005) (explaining that the Eighth Amendment's provisions apply to convicted and sentenced state prisoners).

Amendment, conditions of confinement must be dangerous, intolerable, or shockingly substandard. *See Riley v. Jeffes,* 777 F.2d 143, 147 (3d Cir. 1985); *Inmates of Allegheny Cnty. Jail v. Pierce,* 612 F.2d 754, 757 (3d Cir. 1979). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

### A.  Claims against Nurse Does #1 through #5, Officer Jane Doe, and John Does #1 through #5 for Deliberate Indifference to a Medical Need

Molina's claims against the Doe Defendants are not plausible for several reasons. First, Molina never alleges each defendant's personal role in the alleged harm. *See Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)); *Jutrowski*, 904 F.3d at 290. Molina only broadly alleges that "unknown nurses and correctional officers refused medical after complaints of head trauma, due to blows from soap in sock, and body/eye pains, plaintiff was having after the fact." Compl. at 9. Likewise, Molina's claim that "nurses with attitude" cleaned his wound and provided Motrin, but gave him "hair ladened dirty water," *see* Compl. at 8, cannot proceed as an Eighth Amendment claim under § 1983 because he has not alleged individual, personal involvement. *See Rode*, 845 F.2d at 1207; *see also Iqbal*, 556 U.S. at 676 ("a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Lawal v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014) (agreeing with the district court that the repeated and collective use of the word " Defendants" "fail[ed] to name which specific Defendant engaged in the specific conduct alleged"). In sum, Molina's vague and pluralized

7

Case 2:25-cv-00077-JFL    Document 9    Filed 02/18/25    Page 8 of 15

assertions with references to groups of unspecified Defendants are insufficient to state a claim. *Lawal*, 546 F. App'x at 113.

These allegations of deliberate indifference to Molina's health or safety also fail to meet the pleading standard under Rule 8, because the Doe Defendants would not have sufficient notice of the legal or factual claims to respond on the merits. *See Afzal v. N.J. Bd. of Med. Examiners*, No. 22-1609, 2022 WL 4533826, at *3 (3d Cir. Sept. 28, 2022) (*per curiam*) (affirming dismissal of complaint pursuant to Rule 8 because plaintiff failed to plead adequate factual content to support a reasonable inference that defendants were liable and failed to present cognizable legal claims to which defendants could respond on the merits); *Wright v. United States*, No. 22-1164, 2023 WL 4540469 (3d Cir. July 14, 2023) (*per curiam*) (affirming the District Court's dismissal with prejudice of a *pro se* amended complaint where the amended complaint failed to assert adequate factual allegations to put the named defendants on notice of the claims against them). Not only has Molina failed to identify distinct Defendants with individually-alleged actions, *see Garrett*, 938 F.3d at 93, but he has not presented the claims with the necessary clarity or any supporting facts. For example, Molina states that when the gash was cleaned and photographed, he was given Motrin. Compl. at 8. He alleges that "[he] continued to advise medical that [he] was in pain, back, shoulder, eye but nothing was done." *Id.* This statement is conclusory and lacking any description of what he said, whom he advised, when he "continued to advise" a Defendant that he was in pain (*i.e.*, how long after he took the Motrin), and what exactly the individual(s) he told did or did not do. *See Wright,* 2023 WL 4540469, at *2 ("to proceed, [a] complaint must do more than broadly describe interactions with a disparate group of entities . . . without identifying actions by specific defendants that support a facially plausible claim for legal relief") (citation omitted). In the same vein, Molina broadly states that the Doe Nurses and

8

Corrections Officers "refused medical" after his complaints "after the fact," Compl. at 9, but the allegation is far too vague for any individual defendant to respond to the allegation(s) against them in the Complaint. *Id.*

Molina will be granted leave to file an Amended Complaint. If he files an Amended Complaint, he must provide specific factual allegations to meet the objective and subjective pleading requirements for a deliberate indifference claim. *See Shorter*, 12 F.4th 366 at 374. To properly plead a claim for deliberate indifference to a serious medical need, Molina must allege that "the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). Further, Molina will need to plead facts concerning each defendant's "sufficiently culpable state of mind" to satisfy the scienter requirement. *See McKinley v. Stanish*, No. 21-00960, 2022 WL 4369974, at *6-7 (M.D. Pa. Sept. 21, 2022) (explaining that no deliberate indifference was plausibly alleged where prisoner received consistent medical attention to his needs and the allegation consisted of a disagreement with doctor's suggested course of treatment); *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (finding that non-medical personnel do not have sufficient scienter for deliberate indifference "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner"). Molina's current allegations are insufficient to state a plausible claim under this standard. *See Iqbal*, 556 U.S. at 678 (explaining that "naked

9

assertion[s], devoid of further factual enhancement" do not suffice to state a claim) (internal quotation marks omitted).

For these reasons, the claims of deliberate indifference to a medical need against the Nurse Does #1 through #5, Jane Doe, and John Does #1 through #5 will be dismissed without prejudice to Molina's filing an Amended Complaint to cure the deficiencies the Court has identified. Should he submit an Amended Complaint, he may list various unidentified defendants as Nurse Doe, John Doe, or Jane Doe in his Amended Complaint. *See Blakeslee v. Clinton Cnty.*, 336 F. App'x 248, 250 (3d Cir. 2009) ("Use of John Doe defendants is permissible in certain situations until reasonable discovery permits the true defendants to be identified.") However, Molina is cautioned that if he names multiple Nurse, John, or Jane Doe defendants again, he must be careful to differentiate which unknown Defendant he refers to in any given allegation (for example, by consistently referring the each by a number) so that each unknown person's individual role in the incident is clear. Unless the Court has sufficient facts to infer that a given, specific Doe defendant has violated Molina's constitutional rights, they will be dismissed from this action.

      **B.**      **Claim Against One Nurse Doe for Deliberate Indifference**

Molina references a specific Nurse Doe only once when he claims an unnamed female nurse told him that he "shouldn't be so ungrateful" about the cup of water he was provided to take the Motrin. Compl. at 8. She then refilled his cup. *Id.* To the extent that Molina attempts to assert a deliberate indifference claim based on the Nurse's statement, it is not plausible. Verbal comments, like the one here, do not constitute cruel and unusual punishment under the Eighth Amendment. *See Sears v. McCoy*, 815 F. App'x 668, 670 (3d Cir. 2020) (explaining that the dismissal of plaintiff's verbal harassment claim at screening was appropriate because a claim

10

of verbal abuse, absent another injury, is not cognizable under § 1983) (citations omitted); *Smith v. Municipality of Lycoming Cnty*, 335 F. App'x 147, 150 (3d Cir. 2009) (stating that a defendant's comments about the thickness of the prisoner's medical file and question about the validity of a medical complaint do not constitute civil rights violations) (citing *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (*overruled in part on other grounds by Shakur v. Schiro*, 514 F.3d 878, 884-85 (9th Cir. 2008)). Also, being offered a cup of allegedly dirty water that was replaced before Molina consumed it does not state a plausible claim for deliberate indifference, because it alleges neither an excessive risk to his health or a serious medical need. This claim will be dismissed with prejudice.

      **C.**    **Claims Against Lieutenant Gordon and Counselor Murphy for Failure to Protect Molina from Another Inmate**

Prison officials have a duty "'to protect prisoners from violence at the hands of other prisoners.'" *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Farmer*, 511 U.S. at 833). However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. To state a plausible failure to protect claim, a prisoner must allege that: (1) the conditions in which he was incarcerated posed a substantial risk of serious harm; (2) prison officials acted with deliberate indifference to that substantial risk of serious harm; and (3) the officials' deliberate indifference caused harm. *See Farmer*, 511 U.S. at 834; *Hamilton*, 117 F.3d at 746. Knowledge of the risk is subjective, such that "the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." *Beers-Capitol v. Whetzel,* 256 F.3d 120, 133 (3d Cir.2001). "Actual knowledge can exist where a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and where circumstances suggest that the defendant-official

11

being sued had been exposed to information concerning the risk and thus must have known about it." *Bracey v. Pennsylvania Dep't of Corr.*, 571 F. App'x 75, 78 (3d Cir. 2014) (cleaned up).

### 1. Lieutenant Gordon

Molina's claim for deliberate indifference against Lieutenant Gordon will be served for a responsive pleading. Molina states that, when he refused to cooperate as a snitch, Gordon had him celled with a DC-status inmate whom Gordon knew "did not take cellmates and assaulted anyone who they tried to cell up with." Compl. at 4. The Complaint alleges that Molina heard Counselor Murphy tell Gordon over speakerphone that the proposed housing location for Molina contained an inmate with DC-status. *Id.* at 7. Gordon allegedly responded to Murphy, that "he's a big fella, he can handle himself," *id.*, apparently referring to Molina. A reasonable inference may be drawn from this allegation that Gordon apprehended a physical risk to Molina, based upon the inmate's prior history of assaulting cellmates, and then, by placing Molina in the cell with that inmate, deliberately disregarded that risk. *See Reece v. Goose*, 60 F.3d 487, 491 (8th Cir. 1995) (concluding that plaintiff raised sufficient evidence that prison officials unreasonably exposed him to substantial risk by placing him in administrative segregation with inmate who had record of propensity for violence); *Bistrian v. Levi,* 696 F.3d 352, 368-70 (3d Cir. 2012) (recognizing that plaintiff stated plausible failure to protect claim when he alleged he had advised officials of threat from violent inmate who later attacked him), *abrogation on other grounds recognized by Mack v. Yost*, 968 F.3d 311, 319 n.7 (3d Cir. 2020); *cf. Bracey*, 571 F. App'x at 79 n.3 (granting summary judgment on failure to protect claim where there was no prior tension between the plaintiff and assailants and the plaintiff did not allege assailants had a history of assaulting other inmates).

Molina further claims that Gordon was aware that prison policy allegedly prohibited the placement of DC- and AC-status inmates together in the same cell, but "[b]ecause [Molina] didn't agree to become Lt. Gordons personal snitch, he purposefully put [Molina] in a cell with [the DC-status inmate] with the expect [sic] goal of being assaulted."  Compl. at 8-9.  The failure to follow prison policies on its own may not provide a predicate for a deliberate indifference claim.  *Schwartz v. Cnty. of Montgomery*, 843 F. Supp. 962, 971-972 (E.D. Pa. 1994) (concluding that the actor's failure to comply with prison policies concerning the supervision of dangerous inmates in itself did not support a § 1983 action for violation of the Eighth Amendment), *aff'd* 37 F.3d 1488 (3d Cir. 1994).  However, when considered with the other alleged facts, it supports a reasonable inference that Gordon knew of and was deliberately indifferent to the risk of harm.  Accordingly, Molina has plausibly alleged a failure to protect claim against Gordon. *See Smolen v. Brown*, No. 18-7621, 2023 WL 6199094, at *9 (S.D.N.Y. Sept. 22, 2023) ("Intentionally exposing an inmate to the risk of harm with no penological purpose is indicative of deliberate indifference to the inmate's safety at best and manifests an intent to harm the inmate at worst, thus constituting cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution.") (internal quotations and alterations omitted).

   2. **Counselor Murphy**

Molina claims that Gordon and Murphy "decided" to place him in that particular cell, but the only mention of Murphy in the Complaint's factual allegations is that Murphy informed Gordon that Molina's proposed cellmate had DC status.  This lone allegation does not support a plausible claim that Murphy deliberately disregarded the risk of harm because there is no assertion that he made the decision to place Molina in the particular cell with an inmate he actually knew to be dangerous.  *See Hamilton*, 117 F.3d at 746 (to establish an Eighth

13

Amendment claim, plaintiff must show defendant's deliberate indifference to the risk). Even if one could draw the inference that Murphy understood from the phone call that Molina would be taken to the cell containing the DC-status inmate, his failure to resolve it is not by itself a sufficient basis for constitutional liability to attach. *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989) ("Obviously, not every official who is aware of a problem exhibits indifference by failing to resolve it."). Accordingly, the claim against Murphy for deliberate indifference is not plausible and will be dismissed without prejudice for failure to state a claim under § 1915A(b)(1).

### D. State Law Claims

Molina asserts that he wants to bring "state law claims" in his Complaint, but beyond that single reference, he fails to specify any causes of action under Pennsylvania law. *See* Compl. at 5. Thus, any such claim is not plausible. Molina will be afforded another opportunity to state the basis of any state law claims in an amended complaint. To the extent that Molina asserts any state law claims here, they are dismissed without prejudice.

### IV. CONCLUSION

As set forth more fully above, the Court is prepared to serve Molina's failure to protect claim against Defendant Lieutenant Gordon in his individual capacity. The claims alleging deliberate indifference to a medical need against Defendants Nurse Does #1 through #5, Officer Jane Doe, and John Does #1 through #5 will be dismissed without prejudice pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim. Molina's claim alleging failure to protect against Counselor Murphy will be dismissed without prejudice pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim. The claim against Nurse Doe for deliberate indifference related to an allegedly dirty cup of water will be dismissed with prejudice.

14

Considering Molina's *pro se* status, he will be granted the option of filing an amended complaint to attempt to cure the defects identified by the Court.[5] In the alternative, Molina may advise the Court that he seeks to proceed only on the failure to protect claim against Defendant Lieutenant Gordon, which will proceed to service.

An appropriate Order follows.

**BY THE COURT:**

*/s/ Joseph F. Leeson, Jr.*
**JOSEPH F. LEESON, JR.
United States District Judge**

---

[5] If Molina chooses to file an amended complaint, it must be a complete document that does not rely on the initial Complaint or other papers filed in this case to state a claim. Although Federal Rule of Civil Procedure 15 contemplates amended pleadings, "an amended pleading supersedes the original pleading and renders the original pleading a nullity." *Garrett*, 938 F.3d at 92. "Thus, the most recently filed amended complaint becomes the operative pleading." *Id.* While the Court must liberally construe *pro se* pleadings, "liberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings." *Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019). This means that the submission of an amended complaint in this case will "effectively constitute[] an abandonment of any prior complaints filed by [Molina]" if he does not reallege them in the amended complaint. *Smith v. Price*, No. 11-1581, 2012 WL 1068159, at *4 (M.D. Pa. Mar. 5, 2012), *report and recommendation adopted*, No. 11-1581, 2012 WL 1072282 (M.D. Pa. Mar. 29, 2012).