**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANGEL MOLINA, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 2:25-cv-0077 |
| | : | |
| LIEUTENANT GORDON, | : | |
| Defendant. | : | |

**O P I N I O N**
**Defendant's Motion for Summary Judgment, ECF No. 31 – Granted**

**Joseph F. Leeson, Jr.** **July 27, 2026**
**United States District Judge**

## I. INTRODUCTION

Plaintiff Angel Molina, *pro se*, brought claims under the Eighth and Fourteenth Amendments of the United States Constitution against several persons employed by the correctional institution, SCI Phoenix, alleging they failed to protect him and failed to attend to his medical needs while he was incarcerated there. Several claims have since been dismissed, and so the only remaining claim in this matter is Molina's Eighth Amendment failure-to-protect claim against Defendant Lieutenant Gordon. Gordon moved for summary judgment, arguing that Molina failed to exhaust his administrative remedies. For the following reasons, the Court grants Gordon's Motion.

## II. BACKGROUND

### A. Factual Background

The following facts come from Gordon's Statement of Undisputed Material Facts. *See* SUMF, ECF No. 30. Since Molina did not respond to Gordon's Statement of Material Facts, the Court treats these facts as undisputed for the purpose of resolving the Motion for Summary

Judgment. *See* Fed. R. Civ. P. 56(e)(2); *see also Chestnut v. Finck*, 722 F. App'x 115, 119 (3d Cir. 2018) (holding that where the plaintiff "failed to dispute the defendants' statement of material facts, the District Court properly deemed those facts admitted").

Plaintiff Molina is currently incarcerated at SCI Camp Hill, though "the events at issue in this lawsuit occurred while he was incarcerated at SCI Phoenix."[1] SUMF ¶ 1. While at SCI Phoenix, Molina "was housed in general population, E Unit." *Id.* ¶ 2. On July 9, 2024, correction officers brought Molina to Gordon's office for a security investigation. *See id.* ¶ 3. The investigation was prompted by prison security after finding several "little pieces of paper" under the table where Molina and two other inmates were playing chess, because "Security personnel suspected the papers were drugs." *Id.* ¶ 4. Gordon filled out and signed a DC-141 form, noting that Molina was "under investigation for a violation of facility rules." *Id.* ¶ 5; *see* also Form DC-141, ECF No. 30-2. Molina "was transferred into the Restricted Housing Unit (RHU) at SCI Phoenix." SUMF ¶ 6. Of the three inmates playing chess, Molina was the only one sent to the RHU. *Id.* ¶ 4.

Molina "was assigned a cellmate in the RHU named Ortiz, who announced to [c]orrections [o]fficers that he did not want a cellmate." *Id.* ¶ 7. While Molina and Ortiz were cellmates, there was "tension" in the cell and Molina "kept telling" the correction officers that he "didn't want to be in the cell with [Ortiz]." *Id.* Ortiz attacked Molina in their shared cell on July 17, 2024, after he "put at least one bar of soap in a sock and beat Molina with the soap in the sock." *Id.* ¶ 9. "Ortiz struck Molina with the soap in the sock multiple times, on his back, ribs, and face." *Id.* ¶ 10. A correctional officer stopped the attack and assisted Molina in getting

---

1 *See also* Angel Molina Dep., ECF No. 30-1 (providing the facts of the case). Since the facts are undisputed, the Court refers solely to the Defendant's Statement of Undisputed Material Facts.

medical attention. *See id.* ¶ 11. Molina "filed three grievances related to the foregoing events and related allegations against SCI Phoenix staff: Grievance Nos. 1099536, 1098812, and 1102041." *Id.* ¶ 12.

Molina's Grievance No. 1099536, received on July 25, 2024, complained of allegedly inadequate medical treatment following the assault, including the "lack of a head scan" after "being hit with 3 or more soaps in a sock to the head" and developing blurry vision. *Id.* ¶ 13. Molina claims that he was "being mistreated just because [of his] RHU status," and demanded $1,500,000 to $2,000,000 in damages. *Id.* Grievance Officer E. Caligiuri denied Grievance No. 1099536 on August 15, 2024, which Molina appealed to the Facility Manager only. *See* SUMF ¶ 14; *see also* ECF No. 30-3. The Facility Manager denied the appeal, noting that it was untimely because the Facility Manager did not receive the appeal until April 24, 2025, when it "was to be received" no later than September 6, 2024. ECF No. 30-3 at 1.

Molina's Grievance No. 1098812,[2] received July 22, 2024, complained of Gordon's conduct, among other acts. *See* SUMF ¶ 15; *see also* ECF No. 30-4. Molina maintained that Gordon "asked [Molina] a series of questions that [Molina] barely responded to, causing [] Gordon to get upset" and that Gordon then placed Molina in the RHU with a "DC-status," *i.e.*, labeling him a "disciplinary custody" inmate, stating that Molina was "a big fella, [who] can handle himself." *Id.* Molina also complained that his requests to be removed from the RHU shared cell were ignored and that he received inadequate medical treatment after the attack, seeking $1,500,000 to $2,000,000 in damages. *See* SUMF ¶ 15. Facility Grievance Coordinator K. Owens denied Grievance No. 1098812 on July 22, 2024, because it "exceeded the two[-]page

---

2 Molina did not reference Grievance No. 1098812 in his Complaint, but because Molina filed three Grievances based upon the cell attack, the Court considers them.

limit "and because "[g]rievances based upon different events must be presented separately." *Id.* Molina resubmitted an additional Grievance on August 2, 2024, *see* ECF No. 30-4 at 2–4, which Owens again denied because it was untimely and exceeded two pages. *See id.* at 1. Molina did not appeal this Grievance. *See id.*; *see also* Keri Moore Decl. ¶ 20, ECF No. 31-1 ("[Molina] did not appeal from the initial rejections, let alone exhausting Grievance Nos. 1098812 and 1102041 through final review.").

Molina's "Grievance No. 1102041,[3] received August 9, 2024, does not name [] Gordon and concerns the alleged denial of medical care only." SUMF ¶ 16; *see also* ECF No. 30-5. Grievance Coordinator, G. Orlando, rejected this Grievance as untimely. *Id.* Molina filed an "appeal" to the Facility Manager arguing that he did not receive the Grievance with the rejection form. *See* ECF No. 30-5 at 4. G. Orlando wrote that Molina could not "appeal the [G]rievance before a rejected [G]rievance has been received." *Id.* at 1. Molina did not further appeal this Grievance. *See id.*; *see also* Moore Decl. ¶ 20 ("[Molina] did not appeal from the initial rejections, let alone exhausting Grievance Nos. 1098812 and 1102041 through final review.").

Molina "did not appeal the rejections of Grievance Nos. 1098812 and 1102041 to the Facility Manager within 15 working days." SUMF ¶ 17. Molina "did not appeal any of the three above-identified Grievances to the DOC Secretary's Office of Inmate Grievances and Appeals for final review." *Id.* ¶ 18; *see also* DC-ADM 804, "Inmate Grievance System Procedures Manual" § 2.B, ECF No. 30-6.

**B. Procedural History**

Molina filed a Complaint in this Court on December 13, 2024, against Defendants Gordon, one "Counselor Murphy," and several John and Jane Does, all of whom were alleged

---

[3] Molina also did not reference Grievance No. 1102041 in his Complaint, but because Molina filed three Grievances based upon the cell attack, the Court considers them.

nurses or corrections officers at SCI Phoenix. *See* Compl., ECF No. 1. The Complaint alleged that the Defendants violated the Eighth and Fourteenth Amendments by failing to protect him and to attend to his medical needs; the Complaint also brought unspecified state law claims. *Id.* at 5. On February 18, 2025, the Court dismissed Molina's claims of deliberate indifference to a medical need against Defendants Nurse Does #1 through #5, Officer Jane Doe, and John Does #1 through #5. *See* ECF Nos. 9-10. The Court also dismissed Molina's failure-to-protect claim against Counselor Murphy and his claim against Nurse Doe for deliberate indifference related to a supposedly dirty cup of water. *See id.* On May 21, 2025, the Court dismissed all claims against Nurse Does #1 through #5, Officer Jane Doe, John Does #1 through #5, and Counselor Murphy, with prejudice, and terminated those Defendants. *See* ECF No. 15. As of the date of this Opinion, the only claim remaining before the Court is Molina's failure-to-protect claim against Gordon.

Gordon filed a Motion for Summary Judgment on December 22, 2025, in which he argues that Molina failed to exhaust his administrative remedies. *See* Mot., ECF No. 31. With the Motion, Gordon filed a Statement of Undisputed Material Facts. *See* SUMF. Gordon also filed a Declaration by Keri Moore, the Chief of the Department of Corrections Secretary's Office of Inmate Grievances and Appeals, *see* Moore Decl., which states that every inmate's grievance must be submitted "within 15 working days after the event on which the claim is based" and must satisfy several specific requirements, including but not limited to a "statement of facts identifying all individuals directly involved in the event(s) at issue." *Id.* at ¶ 5. The Court granted Molina numerous extensions of time to file a response to the Motion for Summary Judgment, *see* ECF Nos. 33, 35, 39, 41, but he has failed to do so. The Court is now prepared to render a decision on the Motion.

## III. LEGAL STANDARDS

### A. Summary Judgment – Review of Applicable Law

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" if proof of its existence or nonexistence might affect the outcome of the case under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *See* Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The court must consider the evidence in the light most favorable to the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

### B. Prisoner Exhaustion of Administrative Remedies

"Prisoners seeking to challenge the conditions of their confinement are subject to the PLRA [Prisoner Litigation Reform Act], which mandates exhaustion of all available

administrative remedies before bringing a lawsuit." *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 304 (3d Cir. 2020) (citing 42 U.S.C. § 1997e(a)). "The PLRA requires proper exhaustion, meaning 'complet[ing] the administrative review process in accordance with the applicable procedural rules.'"[4] *Id.* at 305 (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). "A prisoner's failure to follow these procedural rules will result in a procedural default of his claims." *Wong v. Betti*, No. 1:22-cv-01063, 2023 WL 4980211, at *5 (M.D. Pa. Aug. 3, 2023) (citing *Spruill v. Gillis*, 372 F.3d 218, 230–32 (3d Cir. 2004)). "[A]ll claims relating to prison life that do not implicate the duration of the prisoner's sentence" are subject to the exhaustion requirement. *See Simmons v. Gilmore*, No. 2:17-cv-00996, 2021 WL 1215773, at *8 (W.D. Pa. Mar. 31, 2021) (citing *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). "Exhaustion is considered separately for each claim brought by an inmate, and if a complaint includes both exhausted and unexhausted claims, courts will dismiss the latter but not the former." *Shifflett v. Korszniak*, 934 F.3d 356, 364 (3d Cir. 2019) (citing *Jones v. Bock*, 549 U.S. 199, 219 (2007)).

The Pennsylvania Department of Corrections' grievance process is as follows:

> First, a prisoner's grievance is submitted to the facility's grievance coordinator, DC–ADM 804 Part VI.B. If the problem is not resolved at the level of the grievance coordinator, then the decision may be appealed to the Facility Manager, DC–ADM 804 Part VI.C. Finally, an aggrieved prisoner may appeal this decision to the Secretary's Office of Inmate Grievances and Appeals, DC–ADM 804 Part VI.D. Only after a prisoner has gone through all of these steps has he exhausted his available administrative remedies.

---

[4] "The PLRA itself does not have a 'name all defendants' requirement. . . . However, prisoners are required to complete the administrative review process in accordance with rules that are defined by the prison grievance process." *Byrd v. Shannon*, 715 F.3d 117, 127 (3d Cir. 2013) (citing *Jones v. Bock*, 549 U.S. 199, 217 (2007)). Prison policy, DC-ADM 804, states, in pertinent part: "The inmate shall identify individuals directly involved in the event(s)." *Byrd*, 715 F.3d at 127 n.5.

*Iseley v. Beard*, 200 F. App'x 137, 140 (3d Cir. 2006) (citing *Spruill*, 372 F.3d at 232); *see also* DC-ADM 804, ECF No. 30-6 (presenting the Pennsylvania Department of Corrections' grievance procedure).

When submitting a grievance, an inmate must "identify individuals directly involved in the event(s)," and "[i]f the inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in his/her initial grievance." DC-ADM 804 § 1(A)(11)(b), (d). Since including this information in the grievance process is mandatory, the Third Circuit has held that the failure to do so bars an individual's claims in subsequent litigation. *See, e.g., Williams v. Pa. Dep't of Corr.*, 146 F. App'x 554, 557 (3d Cir. 2005) ("[I]n the absence of any justifiable excuse, a Pennsylvania inmate's failure to properly identify a defendant constituted a failure to properly exhaust his administrative remedies under the PLRA." (citing *Spruill*, 372 F.3d at 234)); *see also Shorter v. Sorber*, No. 22-5089, 2024 WL 1442163, at *3 (E.D. Pa. Apr. 3, 2024) (dismissing an Eighth Amendment claim under the PLRA for failure to satisfy the exhaustion requirement).

## IV. ANALYSIS

Here, Molina has failed to exhaust his claims under the PLRA. As an initial matter, he has failed to appeal Grievance No. 1098812 and Grievance No. 1102041 to the Facility Manager. He did not raise either Grievance with a Facility Manager within the applicable time frame. Additionally, although Molina appealed Grievance No. 1099536 to the Facility Manager, he failed to appeal that decision to the Secretary's Office of Inmate Grievances and Appeals. Additionally, Molina failed to identify Gordon in Grievance No. 1099536. Thus, Molina has failed to exhaust his claims and his suit against Gordon is barred.

The Department of Corrections received Molina's Grievance No. 1098812 on July 22, 2024. *See* SUMF ¶ 15; *see also* ECF No. 30-4. Owens, the Grievance Coordinator, rejected the Grievance on July 22 because it "exceeded the two[-]page limit[,]" and "[g]rievances based upon different events must be presented differently." *Id.* at 5. Molina had until July 29, 2024, to resubmit his Grievance. *See id.* at 1. Molina resubmitted an additional Grievance on August 2, 2024, *see id.* at 2–4, which Owens again denied on August 13, 2024, because it was untimely and exceeded two pages. *See id.* at 1. There is no evidence in the record that Molina ever appealed this rejection to the Facility Manager, much less to the Secretary's Office of Inmate Grievances and Appeals; the Court finds that no genuine factual dispute exists as to whether Molina did so. Therefore, the PLRA's exhaustion requirement bars his claims against Gordon based upon Grievance No. 1098812.

Second, the Department of Corrections received Molina's Grievance No. 1102041 on August 9, 2024. *See* SUMF ¶ 16; *see also* ECF No. 30-5. The Department rejected the Grievance as untimely because "the [G]rievance [did] not provide an incident date." ECF No. 30-5. Although it appears that Molina submitted an appeal of the rejection because he had not yet received the rejected Grievance, the Grievance Coordinator noted that he could not appeal a rejected Grievance that he had not yet received. *See id.* There is no evidence in the record that, after receiving the rejected Grievance, Molina appealed it to the Facility Manager, or that it was appealed thereafter to the Secretary's Office of Inmate Grievances and Appeals by August 16, 2024. *See id.* There is no genuine factual dispute as to whether Molina appealed this Grievance—he did not. The PLRA's exhaustion requirement thus bars his claims based upon Grievance No. 1102041.

Third, the Department of Corrections received Molina's Grievance No. 1099536 on July 25, 2024. *See* SUMF ¶ 13; *see also* ECF No. 30-3. On August 15, 2024, the Grievance Coordinator rejected this Grievance. *See* SUMF ¶ 14; *see also* ECF No. 30-3. Molina appealed to the Facility Manager, but not to the Secretary's Office of Inmate Grievances and Appeals. *See* ECF No. 30-3. Even so, his appeal to the Facility Manager was over six months late and therefore was denied as untimely. *See id.* There is no genuine factual dispute that Molina failed to appeal this Grievance to the Secretary's Office of Inmate Grievances and Appeals; Molina thus failed to exhaust his claims based upon Grievance No. 1099536.

Moreover, beyond failing to appeal his claim based upon Grievance No. 1099536, Molina also failed to identify Gordon as the individual involved in the events mentioned therein. *See* ECF No. 30-3; *see also* Moore Decl. ¶ 18 ("[I]t is clear from the four corners of [Molina's] initial Grievance that he did not identify [] Gordon as an individual involved in the event at issue."). As noted above, a prisoner fails to exhaust his claim against a particular defendant under the PLRA if he fails to identify that defendant on a grievance form. *See Williams*, 146 F. App'x at 557; *see also Johnson v. Pa. Dep't of Corr.*, No. 21-516, 2023 WL 2975161, at *11 (M.D. Pa. Apr. 17, 2023), *amended on reconsideration*, No. 21-516, 2023 WL 4138251 (M.D. Pa. June 22, 2023) (granting summary judgment because the prisoner's grievance failed to identify some of the defendants by name or title); *see also Simmons*, 2021 WL 1215773, at *15 (W.D. Pa. Mar. 31, 2021) (granting summary judgment in part based upon the plaintiff's failure to exhaust his claim under the PLRA because he failed to identify one of the defendants in his grievances); *Pressley v. Huber*, No. 08-449, 2018 WL 1079612, at *10 (M.D. Pa. Jan. 11, 2018), *report and recommendation adopted*, No. 08-449, 2018 WL 1077300 (M.D. Pa. Feb. 27, 2018) (granting in part a motion for summary judgment based upon the plaintiff's failure to identify certain

defendants in his grievance). Although Molina referred to Gordon in his appeal and in his Complaint before this Court, *see* ECF No. 30-3 at 3–6; *see also* Compl., he did not refer to Gordon in Grievance No. 1099536. *See* ECF No. 30-3 at 10. He thus failed to exhaust his claims against Gordon which stem from this Grievance.

Separately, the Court must consider whether Molina could be excused from the PLRA's exhaustion requirement. The Third Circuit has a "reluctance to invoke equitable reasons to excuse [a prisoner's] failure to exhaust as the statute requires." *Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2002). An inmate's failure to exhaust administrative remedies under the PLRA will only be excused "under certain limited circumstances," *Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005), such as by showing that "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." *Davis*, 49 F. App'x at 368. "[A] prisoner cannot avoid full compliance with grievance procedures by merely alleging the DOC policies were not clearly explained to him." *Davis v. Wetzel*, No. 23-208, 2025 WL 2734159, at *7 (W.D. Pa. Sept. 25, 2025), *aff'd*, No. 25-2958, 2026 WL 1180533 (3d Cir. Apr. 30, 2026). Rather, the Third Circuit has held that a correctional institution "render[s] its administrative remedies unavailable to [a prisoner] when it fail[s] to timely (by its own procedural rules) respond to his grievance and then repeatedly ignored his follow-up requests for a decision on his claim." *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016). Furthermore, "administrative remedies are not 'available' under the PLRA where a prison official inhibits an inmate from resorting to them through serious threats of retaliation and bodily harm." *Rinaldi v. United States*, 904 F.3d 257, 267 (3d Cir. 2018).

Unfortunately for Molina, he is not one of these exceptional cases, nor did he engage in any of the aforementioned conduct. A party opposing summary judgment must come forth with

"affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); *see* Fed. R. Civ. P. 56(e). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. *See Anderson*, 477 U.S. at 250-57. Here, Molina fails to present any evidence in opposition to the Motion for Summary Judgment, despite receiving multiple opportunities to do so, and does not suggest that he was misled or prevented from appealing his Grievances to the Facility Manager or Secretary's Office of Inmate Grievances and Appeals. Therefore, the Court finds that he has not exhausted his claims based upon any of the aforementioned Grievances. *See Sargent v. Larson*, No. 1:17-cv-511, 2019 WL 1316024, at *4 (M.D. Pa. Mar. 22, 2019) (granting summary judgment to the defendant because the plaintiff failed to exhaust the grievance procedure available at his correctional facility and failed to respond to the motion for summary judgment or provide any evidence to support his claims). The Court grants summary judgment to Gordon. *See id.*

## V. CONCLUSION

For the foregoing reasons, the Court grants Gordon's Motion for Summary Judgment. The Court finds that Molina failed to exhaust his administrative remedies under the PLRA and is not otherwise excused from the PLRA's exhaustion requirement.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*_______
JOSEPH F. LEESON, JR.
United States District Judge